IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SANCHELIMA INTERNATIONAL, INC., and
SANCHELIMA INTERNATIONAL S. DE R.L. DE
C.V.,

                     Plaintiffs,

   v.

WABASH NATIONAL CORPORATION,
WALKER STAINLESS EQUIPMENT COMPANY,
LLC, and
BULK TANK INTERNATIONAL, S. DE R.L. DE
C.V.,

                     Defendants.

OPINION & ORDER

18-cv-31-jdp

---

This is the second contract case concerning these parties to arise in this court. Plaintiffs are affiliated companies that the court will refer to collectively as "Sanchelima." The court will take the same approach with defendants and refer to them as "Walker."

Walker manufactures dairy silos; Sanchelima sells and distributes dairy silos in Latin America. In a written distribution agreement, Walker designated Sanchelima to be its exclusive distributor of dairy silos in 13 Latin American countries. In September 2016, Sanchelima filed suit against Walker, claiming that Walker breached the contract by selling diary silos directly to customers in Sanchelima's territory. *Sanchelima International, Inc. v. Walker Stainless Equipment Company, LLC* (*Sanchelima I*), No. 16-cv-644 (W.D. Wis. filed Sept. 20, 2016). In response to the suit, Walker terminated the distribution contract and filed counterclaims alleging that Sanchelima was first to breach the contract. The case was tried to the court, and on March 19, 2018, the court entered judgment in Sanchelima's favor on all claims. Walker has appealed.

Meanwhile, in January 2018, Sanchelima filed this case, alleging that after Walker terminated the distribution agreement, it continued to sell dairy silos to Sanchelima, prompting Sanchelima to continue to market Walker dairy silos. Dkt. 21. But on January 11, 2018, Walker abruptly refused to allow Sanchelima to market or sell its products, despite a half a million dollars in pending orders and more than 21 million dollars in open quotes. *See* Dkt. 1-2. Sanchelima claims that Walker's about-face breached an implied contract between the parties, unjustly enriched Walker, intentionally interfered with Sanchelima's prospective sales to customers, and maliciously injured Sanchelima's business. It seeks damages and an injunction forcing Walker to sell its products to Sanchelima.

Now, Walker moves to dismiss Sanchelima's claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. 27. The court will grant Walker's motion for the most part, dismissing four of Sanchelima's five claims. The civil conspiracy claim will survive alone.

ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a plausible claim for relief, that is, facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is not bound to accept alleged legal conclusions. *Id.* at 827.

The court will address three preliminary matters before analyzing Sanchelima's claims. First, in support of its motion to dismiss, Walker adduces a January 19, 2018 letter from Walker's counsel to Sanchelima's counsel, in which Walker promises to fulfill Sanchelima's pending orders. Dkt. 20-1. It argues that in light of this letter, most of Sanchelima's claims fail

(and the remaining claims fail for independent reasons). The court agrees with Sanchelima that this letter may not be considered at this stage because it is not referred to in Sanchelima's complaint. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). But regardless, those claims to which the January 19 letter is pertinent fail for independent reasons.

Second, in its reply brief, Walker argues that the court lacks jurisdiction under Article III because Sanchelima does not present a case or controversy. *See* Dkt. 34, at 4–6. Walker raised this argument for the first time in its reply brief, but the court may raise subject matter jurisdiction sua sponte. Walker's theory is essentially that Sanchelima fails to state a claim and therefore doesn't present a case or controversy, so the court will analyze Walker's motion under Rule 12(b)(6), as the dispositive issue is whether Sanchelima states a claim for relief.

Finally, the court will address a different aspect of subject matter jurisdiction: diversity jurisdiction. In its amended complaint, Sanchelima alleges that diversity jurisdiction exists because the amount in controversy exceeds $75,000 and the parties are completely diverse in citizenship. For the latter to be true, the two plaintiffs cannot be citizens of the same state as any defendant. Sanchelima alleges the citizenship of Sanchelima International S. de R.L. de C.V. and Bulke Tank International, S. de R.L. de C.V. as if they were corporations. But as the court determined in *Sanchelima I*, these entities are more similar to an American limited liability company, and therefore their citizenships are determined by the citizens of their members. *See* No. 16-cv-644, Dkt. 100. At trial, the court determined the citizenship of these entities and concluded that the parties were completely diverse. *See* No. 16-cv-644, Dkt. 126, at 11. So despite Sanchelima's incomplete citizenship allegations in its amended complaint, the court concludes that it has subject matter jurisdiction over Sanchelima's claims in this case on the basis of diversity under 28 U.S.C. § 1332(a).

## A. Breach of implied contract

The parties agree that Wisconsin law applies to Sanchelima's claims. To state a claim for breach of an implied contract, Sanchelima must allege the same elements of a standard breach-of-contract claim, that is, (1) a contract, (2) its breach, and (3) resulting damages. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469 (7th Cir. 2009). But an implied contract is established by "circumstances from which the intention [to contract] is implied," whereas in a standard contract, the intent to contract is express. *Id.* (quoting *Theuerkauf v. Scutton*, 102 Wis. 2d 176, 306 N.W.2d 651, 657 (1981)). So Sanchelima must allege what promises were exchanged, how they were communicated, how they created an implied contract, and how Walker breached the implied contract. *See Nat'l Council of the U.S. Soc'y of St. Vincent de Paul, Inc. v. St. Vincent de Paul Cmty. Ctr. of Portage Cty., Inc.*, No. 16-cv-423, 2017 WL 3575102, at *4 (W.D. Wis. June 1, 2017).

Here, Sanchelima alleges that Walker's "course of dealing" with Sanchelima after terminating the distribution agreement created an implied contract. Dkt. 21, ¶ 27. But a course of dealing alone does not create an implied contract; there must be an intent by both sides to make a legally enforceable commitment. *See Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 463 (7th Cir. 2001); *Nat'l Council*, 2017 WL 3575102, at *4. Sanchelima doesn't allege any facts indicating such an intent. Nor does it allege exactly what commitment it believes Walker to have made. The court takes Sanchelima's theory to be that Walker committed to the terms of the distribution agreement that it had just terminated. That's implausible—the court will not infer that by selling to Sanchelima after terminating the distribution agreement, Sanchelima intended to reaffirm the commitments that it had just repudiated. At most, Sanchelima's allegations might suggest an implied contract that was

4

terminable at will. *See Nat'l Council*, 2017 WL 3575102, at *4. That implied contract would have been terminated, not breached, in January 2018 when Walker announced its intention to cease doing business with Sanchelima. Sanchelima has not alleged a breach of such an at-will contract.

One might wonder whether the pending orders that Sanchelima had placed with Walker before January 2018 would qualify as implied contracts. They would more likely be considered express contracts, but regardless, Sanchelima doesn't claim that Walker breached those contracts. As damages for this claim, it seeks only lost profits on pending *quotes*, that is, Walker's offers to sell certain equipment at certain prices, which Sanchelima had not accepted by January 2018. It does not discuss the specifics of the orders, nor does it allege that Walker refuses to fill those orders—instead, it alleges simply that Walker revoked its "rights to sell" Walker's products. Dkt. 21, ¶ 22. (And it appears that Sanchelima couldn't allege a refusal to fill the orders, in light of Walker's January 19 letter.) Sanchelima does not state a claim for breach of an implied contract.

**B. Promissory estoppel**

To state a claim for promissory estoppel under Wisconsin law, Sanchelima must allege (1) that Walker made a promise, (2) which Walker should have reasonably expected to induce Sanchelima's action or forbearance and (3) which did induce action or forbearance, and (4) that injustice can be avoided only by enforcement of the promise. *See Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267, 273 (Wis. 1965); *Nat'l Council*, 2017 WL 3575102, at *5.

Sanchelima attempts to reframe its implied-contract claim as a promissory-estoppel claim. The promissory-estoppel claim fails for the same reason: Sanchelima has not alleged a

5

promise made by Walker. True, the promise need not be so definite or comprehensive that it would create a contract once accepted, but it must still be a promise. *See Hoffman*, 133 N.W.2d at 275. The only potential promises at issue in this case would be the quotes and orders that were pending when Walker instructed Sanchelima to stop marketing and selling its products. But Sanchelima's allegations about those quotes and orders are vague, too vague to sustain a claim. And Sanchelima doesn't seek enforcement of the quotes and orders, specifically. Rather, it seeks enforcement of Walker's general "promise to sell its products to" Sanchelima. Dkt. 21, ¶ 34. Without any factual allegations supporting the inference that Walker made such a promise, Sanchelima does not state a claim for promissory estoppel.

## C. Unjust enrichment

To state a claim for unjust enrichment under Wisconsin law, Sanchelima must allege that (1) it conferred a benefit upon Walker, (2) Walker appreciated or knew of the benefit, and (3) Walker accepted or retained the benefit under circumstances making it inequitable for Walker to retain the benefit without payment of its value. *See Buckett v. Jante*, 2009 WI App 55, ¶ 10, 316 Wis. 2d 804, 767 N.W.2d 376; *Nat'l Council*, 2017 WL 3575102, at *5.

Sanchelima's allegations in support of this claim are vague and conclusory. The alleged benefit conferred upon Walker is "the time, effort and money expended on the promotion and marketing of [Walker's] product and . . . open quotes to [Sanchelima's] customers for [Walker's] products that, if converted to orders, could result in millions of dollars in sales for [Walker]." Dkt. 21, ¶ 35. How did Walker accept or retain this benefit? Sanchelima doesn't say. As for the value of the benefit, Sanchelima seeks "damages for unjust enrichment," but doesn't explain what those damages would be. The value must be limited to the benefit conferred upon Walker; Sanchelima's costs would not be recoverable. *Lindquist*, 557 F.3d at

6

477. The price of Sanchelima's services might be recoverable, but only if those services actually benefited Walker. *Id.* Here, the mere fact that Sanchelima spent time and money marketing Walker's products doesn't mean that Walker benefited from Sanchelima's services. The value of the benefit presumably would be Walker's profits from post-January 2018 sales that it wouldn't have made without Sanchelima's help, sales that otherwise would have gone through Sanchelima. But Sanchelima doesn't allege that any such sales have occurred—that is, Walker hasn't retained that benefit.

In response to Walker's motion to dismiss, Sanchelima changes tack. It now argues that the benefit conferred upon Walker is the completed sales of Walker products through Sanchelima since the termination of the distribution agreement, that is, sales that occurred before January 2018. *See* Dkt. 31, at 6. Sanchelima alleges that these sales occurred "under the same or similar terms and conditions as those set forth in the" distribution agreement. Dkt. 21, ¶ 25. These sales presumably benefitted Walker in the form of profits, but they presumably conferred a similar benefit upon Sanchelima. It would not be inequitable for Walker to retain the profits; rather, it would be inequitable to force Walker to pay its profits to Sanchelima. Under either of Sanchelima's theories, it fails to state an unjust enrichment claim.

### D. Tortious interference with contract

To state a claim for tortious interference with contract under Wisconsin law, Sanchelima must allege that (1) it had an actual or prospective contract with a third party; (2) Walker interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused Sanchelima to sustain damages; and (5) Walker was not justified or privileged to interfere. *Share Corp. v. Momar Inc.*, No. 10-cv-109, 2011 WL 2600740, at *2 (E.D. Wis. June 29, 2011) (citing *Shank v. William R. Hague, Inc.*, 192 F.3d

7

675, 681 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Sanchelima alleges that Walker tortiously interfered with its orders and quotes for its customer and potential customers by revoking its right to sell Walker products. Essentially, Sanchelima claims that Walker's refusal to sell dairy silos to it barred it from fulfilling its contractual duties to its customers.

Walker contends that Sanchelima's tortious-interference claims are barred by the economic loss doctrine. Wisconsin's economic loss doctrine prevents a plaintiff from claiming tort damages for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233. This court has previously held that the economic loss doctrine applies to tortious-interference claims. *See Piano Gallery Madison, LLC v. Create Music, LLC*, No. 17-cv-713, 2018 WL 3475474, at *2–3 (W.D. Wis. July 19, 2018).

Sanchelima argues that the economic loss doctrine does not apply here because the losses at issue—lost sales with potential customers—don't arise out of a contract with Walker. But the economic loss doctrine applies even where there is no contract between the parties, as long as the plaintiff "had an opportunity to 'allocate economic risk by contract,'" *Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶ 18, 289 Wis. 2d 252, 710 N.W.2d 680 (quoting *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 16, 283 Wis. 2d 606, 699 N.W.2d 189), and was connected to the defendant "through the chain of distribution or sale," *Tilot Oil, LLC v. BP Prods. N. Am., Inc.*, 907 F. Supp. 2d 955, 970 (E.D. Wis. 2012). That's exactly what happened here: Sanchelima could have contracted with Walker to ensure that their distribution arrangement would continue—in fact, it *did* contract with Walker, but Walker terminated that agreement. When Sanchelima chose to continue marketing and selling

8

Walker's products without another contract in place, it did so at its own peril. Sanchelima's failure to allocate its economic risk by contract does not except it from the economic loss doctrine.

Sanchelima also argues that the doctrine only applies to defective products or services, which are not at issue here. Although the doctrine *may* apply to claims for economic losses stemming from products that are defective or inferior, the cases cited above indicate that it is not limited to such claims. It applies to contracts for products, not services. *Trinity Lutheran*, 2006 WI App 22, ¶ 22. Products, not services, are at issue here. The fact that Walker refused to sell any products to Sanchelima, rather than selling it defective products, does not except Sanchelima's tortious-interference claim from the doctrine.

Finally, Sanchelima argues that its claimed damages are not economic losses, but rather damages for malicious injury to business. Not so. Sanchelima's malicious-injury-to-business claim, discussed below, seeks damages for malicious injury to business, but its tortious-interference claim seeks recovery of the monetary loss caused by Walker's refusal to sell it dairy silos, precisely the sort of damages that are considered economic under the doctrine. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 573 N.W.2d 842, 845 (1998) ("[E]conomic loss is damage to a product itself or monetary loss caused by the defective product, which does not cause personal injury or damage to other property."). Because the economic loss doctrine bars Sanchelima's tortious-interference claim, the court will dismiss it.

E.  **Malicious injury to business**

Finally, Sanchelima claims that Walker maliciously injured its business in violation of Wisconsin Statute section 134.01. To state a claim under section 134.01, Sanchelima must allege that two or more entities conspired to willfully and maliciously injure its business and

9

that the conspiracy actually injured it. *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI 128, ¶ 20, 297 Wis. 2d 606, 724 N.W.2d 879.

Sanchelima alleges that each of the defendants, which the court has collectively referred to as "Walker" until this point, conspired together to prevent Sanchelima from selling their dairy silos in retaliation for Sanchelima's first lawsuit. Sanchelima names Wabash National Corporation, Walker Stainless Equipment Company, LLC, and Bulk Tank International, S. de R.L. de C.V., as defendants. It alleges that Bulk Tank designs, manufactures, and sells stainless steel storage tanks in Mexico; that Walker designs, manufactures, and sells stainless steel storage tanks in Wisconsin; and that Wabash is one of the partners in a limited partnership that, through a chain of limited liability companies, controls Walker.

Walker contends that Sanchelima fails to state a claim under section 134.01 for three reasons. First, it argues that the economic loss doctrine bars this claim, too. This is a non-starter: the doctrine does not apply to section 134.01 claims. *Brew City Redevelopment*, 2006 WI 128, ¶ 25; *see also Piano Gallery Madison, LLC v. Create Music, LLC*, No. 17-cv-713, 2018 WL 734430, at *2 (W.D. Wis. Feb. 6, 2018) ("Wisconsin courts have consistently held that the economic loss doctrine does not bar statutory claims . . . .").

Second, it raises the intracorporate conspiracy doctrine. Under this doctrine, a parent corporation and its wholly owned subsidiary "have a complete unity of interest" and therefore are not two or more entities for the purpose of section 134.01. *Brew City Redevelopment*, 2006 WI 128, ¶ 47–48. Walker argues that it is a wholly owned subsidiary of Wabash, and therefore they have a complete unity of interest are not two or more entities. But it is not clear from the complaint that that is the case. Rather, the complaint alleges that Wabash *partly* owns Walker. And what about Bulk Tank? There are undoubtedly close business relationships between these

three entities, but whether they have a complete unity of interest is a question of fact, not a legal issue that can be decided under Rule12(b)(6). *Cf. Martin*, 2015 WL 1486517, at *9.

Third, Walker points to this court's statement in *Martin v. LG Electronics USA, Inc.*, "A civil conspiracy claim cannot stand alone; it must be predicated on an underlying wrongful act." No. 14-cv-83, 2015 WL 1486517, at *9 (W.D. Wis. Mar. 31, 2015). It argues that because its decision to stop selling to Sanchelima was not otherwise actionable, it cannot form the basis for a claim under section 134.01. A review of Wisconsin case law reveals that this is not the case; the court will take this opportunity to correct its statement in *Martin*. In *Maleki v. Fine-Lando Clinic Chartered, S.C.*, the Wisconsin Supreme Court explained that it "has rejected the rule that, for a cause of action for conspiracy to lie, there must be an underlying conduct which would in itself be actionable." 162 Wis. 2d 73, 469 N.W.2d 629, 637 (1991). The underlying conduct must be malicious, that is, "intended to cause harm for harm's sake," but it need not be independently unlawful. *Id.* at 634. Sanchelima's allegations meet this standard: it alleges that the three defendants conspired to bar it from marketing or selling Walker products with an intent to injure its business. That's the exact type of action cited in *Maleki* as an example of a civil conspiracy actionable under section 134.01. *See id.* at 637 (noting that a conspiracy "to deprive a particular retailer of a supply of coal of the malicious purpose of forcing that retailer out of business" was actionable under section 134.01 even though "the injured plaintiff had no right, contractual or otherwise, to an 'unremitting' flow of coal" (citing *Hawarden v. The Youghiogheny & Lehigh Coal Co.*, 111 Wis. 545, 87 N.W. 472 (1901))). So the court will deny Walker's motion to dismiss the civil conspiracy claim under section 134.01; the case will go forward on this claim alone.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 27, is GRANTED in part.

Entered August 13, 2018.

        BY THE COURT:

        /s/

        _____
        JAMES D. PETERSON
        District Judge